**SCHILLINGER v. SCHILLINGER HOUSE, Inc. et al.**

Civ. A. 8911.

United States District Court. D. Massachusetts.

Dec. 6, 1951.

708

Lee M. Friedman and Lawrence M. Levinson, Friedman, Atherton, King & Turner, all of Boston, Mass., for plaintiff.

Martin W. Cohen, Richard F. Walker, Boston, Mass., for defendants.

SWEENEY, Chief Judge.

In this action the plaintiff seeks to enjoin the defendants from the use of the word "Schillinger", either alone or in conjunction with any other word in any manner, and also seeks to recover such profits and gains as the defendants may have realized from the unlawful use of the name. The defendants in substance aver that they were entitled to use the name as they have used it, and in a counterclaim ask for a decree declaring that they are fully vested with the exclusive right to conduct and advertise a school under the name "Schillinger House."

Findings of Fact

The plaintiff is the widow of Joseph Schillinger who died in 1943 and is the executrix of his will. He was an artist, scientist, and musician, and devised a new method of composing and arranging music by means of mathematical charts and graphs. He was a theorist and brought into the world of music a radical change in the method of composition and arrangement of music. He taught a great many of our present-day distinguished musicians and band leaders, and up to the time of his death all of his time was taken up in teaching. After his marriage to his present widow in 1938, he many times spoke to her about reducing his theories, methods and manuscripts into book form, and disclosed to her how it should be done. Upon his death in 1943 it was left for his widow and sole legatee to develop and exploit posthumously the works and budding reputation of her late husband. Toward this end she signed a royalty contract with Carl Fischer, Inc., to publish Schillinger's notes on musical theory in a two-volume edition entitled "The Schillinger System of Musical Com-

position." She turned over to the Fischer organization the task of authorizing persons who met prescribed standards to teach the system as "authorized Schillinger teachers." A department of the Fischer Company called the "Schillinger Institute" was set up for this purpose with Mrs. Schillinger's approval. At the same time she concentrated on spreading her husband's name as an original thinker in science, music, and art. Toward this end she formed and ran the Schillinger Society which disseminated information on the life and theories of Joseph Schillinger. These efforts resulted in many articles in leading musical periodicals about Schillinger and his ideas. It may be worth noting here that these musical theories apparently cut across the conventional "classical" and "popular" music lines and are applicable to all musical composition.

The defendant, Berk, who had studied under Schillinger, made his first significant appearance in this controversy as an authorized Schillinger teacher in Boston in October 1945. In May of 1946 he wrote the Schillinger Society for permission to call a building which he intended to convert into a "studio and classroom building", The Schillinger Building. He further wrote: "The naming of the building, besides being a tribute to a great man would certainly mean a great deal in making Boston more and more Schillinger conscious, especially if we could manage to have The Schillinger Building representative of Schillinger's theories in both Music and Art." The reply of the Society said that Berk might call his building "Schillinger House."

These communications warrant the inference that Mr. Berk would teach courses in Schillinger theory in a building called Schillinger House, and being "representative of Schillinger's theories in both Music and Art" (see the previous paragraph) implicitly represented that Schillinger House would teach nothing but Schillinger theory.

Mr. Berk's school opened in 1946 in time to meet the influx of post-war students and to enjoy the benefits of the widespread interest created by the publication of the "Schillinger System of Musical Composi-

tion" in 1945. From the outset the school's enrollment far exceeded Berk's expectations, at one point in 1949 reaching a peak of around 500 students. It is to be noted that the permission given Berk by the Society was merely to call his building "Schillinger House." Berk so applied the name to the building. Gradually he used the name "Schillinger House" in such a way as to connote to the public a house in the sense of a studio or a school rather than as a building. The plaintiff and the Schillinger Society and Institute knew of this use of the name and apparently acquiesced in it and so used it themselves. Such acquiescence I find was induced by the belief that Berk was using the name Schillinger in the same sense that it was being used by the Society and Institute in New York, that is, to identify the name with the man and his distinctive theory of music and art. It is to be noted that they never gave direct and positive permission to use the name Schillinger in connection with the school, but they did knowingly permit its use in the belief that its use by Berk would conform to this sense and purpose.

As was inevitable, the name of the building in which the school was conducted soon was used to refer to the school itself so that even the Schillinger Society identified Schillinger House as a school in Schillinger theory run by Mr. Berk on Newbury Street in Boston. Yet in using this title the Society referred to a school dedicated to teaching a certain subject-matter: The Schillinger System of Musical Composition—of which Berk is an authorized teacher. There are indications that Berk has expanded his school's activities to such an extent that it can no longer be said that Schillinger House is "representative of Schillinger's theories * * *" Schillinger House sells notebooks to students bearing the label "Schillinger House", rents instruments to students, rents rooms to other independent teachers, and produces two commercial television shows featuring amateur song contests. Only full-time students are required to take courses on Schillinger theory; of 424 students only 200 take these courses; out of a faculty of 40, only 10 teach these subjects. Berk has formed a corporation called Schillinger House, Inc., in order to get a degree-granting charter and has unsuccessfully sought from Mrs. Schillinger irrevocable, exclusive authorization to use this title throughout the whole country. He has taken in as a partner in his school a person in no way authorized to teach the Schillinger system or use the name Schillinger. It looks as though the tail is beginning to wag the dog.

Whatever factors of estoppel or acquiescence that may favor Berk are offset by the fact that in condoning Berk's advertisements and other activities that came to their notice, neither Mrs. Schillinger nor the Society was aware of the fact that Berk's school was no longer dedicated to Schillinger theory but was gradually subordinating the teaching of this novel theory to more conventional and strictly commercial enterprises. By commercializing the name in this manner Berk was doing serious injury to the name "Schillinger". Such use by him would have been as offensive to Joseph Schillinger as it is to his widow and the Schillinger societies. There is no doubt that Berk has done much to build up the name "Schillinger" in Massachusetts, but he has done so in a manner which is detrimental to the national understanding of the Schillinger personality and his theories.

The conclusion that Berk's school no longer adheres to its original purpose of teaching the Schillinger system rests on no single fact alone. It may not be out of line for the school as an *incidental* service for the convenience of its students to sell them notebooks or rent them instruments, but in combination with other factors abovementioned and connecting the school name with commercial television shows, the conclusion is well-warranted that the name Schillinger is being diluted and linked with enterprises in such a way as to defeat the purposes of Mrs. Schillinger and the Schillinger Society to identify the name of the man with his own creative ideas.

* * * * * *

After the writing of the foregoing portion of this opinion had been completed, it was recognized that it was going to be

difficult to work out a fair and equitable solution of the problem presented. Berk had vastly exceeded the authority given him and might be held to have forfeited any rights which had been granted to him by reason of overreaching. On the other hand, Berk has contributed substantially to the development of the Schillinger name and system, in spite of his overreaching. I suggested to the parties concerned two possible solutions which they might use as a basis for working out their difficulties, as follows:

(1) that the defendant, Berk, be compelled to confine his activities strictly to the authority granted, which was, namely, to title his building "Schillinger House" and to teach the Schillinger method therein; that thus limited, the divorce between the authorized practices of Berk and his other practices referred to in the body of this opinion must be complete and definite.

(2) that the defendants be permanently enjoined from using the name Schillinger or teaching the method because of the abuse of the privileges granted them.

After some weeks the parties reported back that they were unable to work out any possible settlement basis, and asked the court to render its opinion. I am not prepared to adopt the second solution for to do so would be to deprive Berk of the fruit of his legitimate efforts in behalf of Schillinger and Schillinger House. The more equitable decision, following suggested solution No. 1, calls for the defendant, Berk, to confine his activities strictly to the teaching of the Schillinger System as authorized, and to refer to himself by name as an authorized teacher of the system. In addition he is authorized to designate the building in which the teaching is done "Schillinger House." He is not authorized to use the name Schillinger House as the name of his school, and such use is to be prohibited. No other music or business of any type is to be conducted in Schillinger House except the teaching of the Schillinger System as authorized. This is to be done exclusively by Berk and employees of his who are authorized to teach the Schillinger System. No other enterprise of any nature is to be conducted by Berk or any other person in the building, and no studio space is to be rented to teachers other than to those teaching the Schillinger System. The use of the name Schillinger in any respect other than the designation of the building and as the name of the system which Berk teaches is absolutely prohibited.

### Conclusions of Law

 From the foregoing I conclude and rule that the defendant, Berk, is not entitled to use the name Schillinger except as designating the name of the building and as designating the system of music which he teaches. An injunction against the use of the name Schillinger in all other respects and manners is granted.

I conclude and rule that the plaintiff is entitled to recover from the defendants damages in consequence of the defendants' wrongful use of the name Schillinger, and an accounting of the profits, gains, and advantages derived therefrom is to be made.

I conclude and rule that the defendant, Halper, is permanently enjoined from using the name Schillinger, either alone or in conjunction with any other words, in any manner.